CLARK, Respondent, vs. JOHNSON, Appellant.

*October 20 — November 3, 1886.*

*Evidence: Receipt: Admission by third person.*

An action having been brought by C. against J. and her son for moneys had and received, the son paid $1,125 to C.'s attorney and took a receipt as follows: "Rec'd of [the son] $1,125, *leaving a balance due C.*, $1,082." J. was not present when the money was paid or the receipt given. The action was then discontinued, but afterwards another action was brought against J. alone for a balance claimed to be due. *Held*, that the receipt was not admissible in evidence against J.

APPEAL from the Circuit Court for *Fond du Lac* County. The case is thus stated by Mr. Justice CASSODAY: "This is an action for moneys had and received during the years 1879, 1880, 1881, and 1882, amounting to $782, which the defendant refused to pay on demand. The answer was a general denial and a counterclaim for board, etc. At the close of the trial, the jury, under the charge of the court, rendered a verdict in favor of the plaintiff and against the defendant for $657. From the judgment entered thereon the defendant appeals."

*N. C. Giffin,* for the appellant.

For the respondent there was a brief by *Duffy & McCrory,* and oral argument by *Mr. Duffy.*

CASSODAY, J. The defendant owned and occupied a farm, and had ever since the death of her husband, which occurred more than thirty years before the trial. The plaintiff is her brother, and was working for her husband as a hired man at the time of his death, and continued to live or make his home with the defendant for some twenty-eight years thereafter. The plaintiff was never married, and so remained with the defendant without any particular arrangement, but from time to time worked some on her farm. The defendant's son, who was something over thirty years of age and unmarried, lived with her and worked her farm. About June, 1882, the plaintiff received quite a quantity of money from the sale of lands. He was then living with the defendant. His room was over the wood-house, and reached only by a staircase from the wood-house. He seems to have been in the habit of drinking to excess, and, after being absent for several weeks, he returned to the defendant's with the money, and was for some weeks sick and more or less out of his head, going from place to place, and requiring more or less watching on the part of the defendant and her son. During that time he claims to have

had his money in his room, kept concealed in different places,— partly in a pocket-book, partly in a belt, and partly in packages. Upon his going away, the defendant's son found $1,125 in the plaintiff's room, and thereupon consulted the town board and the county judge as to what had better be done with the money. They, or some of them, advised that the plaintiff be put under guardianship, and steps were taken to that end. In September, 1882, the plaintiff sued the defendant and her son jointly, claiming from them a large quantity of his money. Thereupon the son alone went to the office of the plaintiff's attorney, and delivered to him the $1,125 in the presence of the plaintiff, when the attorney delivered to the son a receipt in these words:

"FOND DU LAC, November 23, 1882.

" Rec'd of John H. Johnson eleven hundred and twenty-five dollars, *leaving a balance due John Clark* one thousand and eighty-two dollars.        "JOHN CLARK,

"By F. F. DUFFY, Att'y for *Clark*."

That suit was then discontinued. Subsequently, and in June, 1883, this suit was commenced against the defendant alone.

The above facts, among others, were disclosed upon the trial. The testimony on the part of the plaintiff is exceedingly vague, confused, inconsistent, and contradictory. Much of it is mere hearsay, given without any objection. It is strenuously urged that the verdict is contrary to the evidence. Were we compelled to pass upon the question, it might be difficult, or even impossible, to point out sufficient legitimate, relevant, and competent evidence to sustain the verdict. But from the view we have taken of the case we deem it unnecessary to do so.

During the trial the defendant's son was sworn in her behalf. On his cross-examination he was questioned in regard to his delivery of the money to Duffy and taking the receipt

mentioned therefor, and finally disclosed that some of the attorneys had the receipt in court. He was thereupon required to produce it, after a good deal of protest on the part of the defendant. Subsequently Mr. F. F. Duffy was sworn on the part of the plaintiff, and testified as to the son paying him the money, and his giving the receipt named, and the whole conversation between them. Then the receipt was offered in evidence on the part of the plaintiff, to which the defendant objected as incompetent, especially where it speaks of a balance being due to the plaintiff. The objection was overruled, and the defendant excepted. Thereupon the receipt was read in evidence, and the witness Duffy was allowed to testify that he understood the $1,082 mentioned in the receipt "included the balance due from *both parties* defendant; that is, *Mrs. Johnson* and her son." There is no pretense that the defendant was present when the money was paid or the receipt given. Upon what theory, under the evidence, she could be bound by statements and admissions of her son and the language of the receipt taken by him, we are unable to perceive. The only doubt we have had as to the propriety of reversing the judgment for such error is the fact that so much hearsay and irrelevant testimony was given without objection that it may be questionable whether the case was injured by this reception of another item.

The error was not cured by the charge to the jury. They were instructed that the receipt was not evidence against the defendant, but might be considered in connection with the son's testimony, for the purpose of determining what weight should be given to his evidence in this action. But his evidence as to what was said when the receipt was given was collateral and irrelevant to the issue on trial, and hence the receipt was improperly received for any purpose.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.